**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

SANG QUANG THAI,

Petitioner,

v.

MARTIN L. FRINK, Warden, Houston Contract Detention Facility; GABRIEL MARTINEZ, Acting Field Office Director, Enforcement and Removal Operations, Houston Field Office, U.S. Immigration and Customs Enforcement; TODD M. LYONS, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD W. BLANCHE, Acting U.S. Attorney General, each in their official capacity,

Respondents.

Civil Action No. 4:26-cv-03933

OPPOSED **EMERGENCY MOTION** OF PETITIONER FOR IMMEDIATE RULING ON FULLY BRIEFED PETITION FOR WRIT OF HABEAS CORPUS (DKT. 1) AND ORDER OF RELEASE, OR ALTERNATIVELY FOR INTERIM RELEASE PENDING DECISION

**EXPEDITED CONSIDERATION REQUESTED**
**(MEDICAL EMERGENCY)**

## I. INTRODUCTION

Petitioner Sang Quang Thai respectfully moves for an immediate ruling on his fully briefed Petition for Writ of Habeas Corpus (Dkt. 1) and an order releasing him under the conditions of his 2008 Order of Supervision (OSUP). Respondents have assented to expedited consideration (Dkt. 9), and merits briefing closed on June 8, 2026 (Dkt. 8). Petitioner has been detained since August 31, 2025—nearly fourteen months—and Respondents have identified no country that will accept him. (Dkt. 6-1 ¶ 33.)

A development since Petitioner filed Docket No. 9 makes a ruling urgent. On September 29, 2026, Texas Oncology turned Petitioner away without seeing him at the three-month specialist follow-up ordered by the hematologist for essential thrombocythemia (ET), a chronic hematologic malignancy (blood cancer) diagnosed during this detention. Texas Oncology declined to see him because U.S. Immigration and Customs Enforcement (ICE) had not paid for his prior care. (**App.**

**A**.) ICE has also announced that it will not pay any claims for off-site detainee care provided on or after October 1, 2026, until funds are allocated. Thus, while Petitioner remains in custody, he cannot obtain the medically necessary care prescribed by Texas Oncology to monitor and treat his chronic and serious medical condition and any progression of the blood cancer.

The Petition already seeks release, and release is the only remedy that addresses both the unlawful detention and the medical risk that detention now creates. If the Court cannot rule immediately, Petitioner asks for limited interim relief: release pending decision; or, alternatively, an order requiring Respondents to ensure prompt specialist evaluation and laboratory work and to file a verified status report on his care. In either case, he asks for 72 hours' notice to his counsel and the Court before any transfer or removal so that he may make arrangements for his continued medical care.

## II. PROCEDURAL POSTURE AND DEVELOPMENTS SINCE BRIEFING CLOSED

### A. The Petition is fully briefed and ready for decision.

Petitioner was admitted to the United States as a refugee from Vietnam in 1992. His order of removal to Australia or Vietnam issued in 1998 but cannot be carried out to Vietnam because of statutory withholding and Convention Against Torture (CAT) protections, and Australia has refused to accept him. (Dkt. 1-1 ¶ 8, Dkt. 8-1 ¶¶ 2–4.) Because the government could not remove him during his more than two years in detention, it released him in 2000 under an OSUP, and Petitioner lived in Massachusetts thereafter, most recently under a 2008 OSUP until ICE re-detained him on August 31, 2025. (Dkt. 1-1 ¶¶ 10–13, Dkt. 6-1 ¶¶ 26–29; Dkt. 8-1 ¶¶ 5–6.) He filed this Petition on May 18, 2026. (Dkt. 1.) The Court ordered Respondents to identify the authority for his detention and to state "precisely what medical care [Petitioner] is receiving while in detention and why the respondent believes it is adequate care." (Dkt. 4 ¶¶ 2–3.) Respondents

moved for summary judgment (Dkts. 6, 7). Petitioner replied on June 8, 2026 (Dkt. 8), and Respondents assented to expedited consideration on September 17, 2026 (Dkt. 9).

**B. Petitioner's diagnosis and prescribed specialist follow-up.**

Since his transfer to Texas in February 2026, Petitioner's laboratory results at the Houston Contract Detention Facility (Facility) showed persistently elevated platelet and white blood cell counts. (Dkt. 10, sealed medical records from February 11 through July 7, 2026.) Petitioner also complained to Facility staff about his unexplained high blood pressure and other abnormal vital signs, painful and compromised mobility, crippling weakness, spreading pins and needles sensations, radiating sciatic pain, swollen extremities, and weight loss, but despite repeated requests, Respondents failed to provide him with access to qualified medical care until *after* he filed this Petition on May 18, 2026. (Dkt. 1-1 ¶ 24.) On June 3, 2026, Petitioner was transported to Texas Oncology in Sugar Land, Texas, where a hematologist found him positive for the JAK2 V617F mutation and ordered a bone-marrow biopsy. (*Id.*, Texas Oncology, 06/03/2026.) The June 11 biopsy result confirmed a "JAK2 V617F-positive myeloproliferative neoplasm most consistent with essential thrombocythemia" (ET). (*Id.*, Texas Oncology, 06/11/2026.) ET is a chronic hematologic malignancy (blood cancer) that carries a lifelong risk of thrombosis (blood clot), stroke, and progression to secondary myelofibrosis or acute leukemia.[1] The Facility's own provider counseled Petitioner on the risk of "TIA" (transient ischemic attack) and "thrombotic events" (blood clots). (*Id.*, NP Stewart, 07/07/2026.)

On June 30, 2026, the Texas Oncology hematologist prescribed and sent to the Facility a long-term surveillance and treatment regimen which includes an antiplatelet therapy of continued

---

[1] Ayalew Tefferi et al., *Essential Thrombocythemia: 2024 Update on Diagnosis, Risk Stratification, and Management*, 99 Am. J. Hematol. 697 (2024), **https://doi.org/10.1002/ajh.27216** (last visited Oct. 23, 2026).

daily low-dose aspirin (to inhibit and control microvascular symptoms), "[c]lose CBC monitoring" indefinitely at specific intervals, and "[r]eturn in 3 months with repeat labs."[2] (*Id.*, Texas Oncology, 06/30/2026.) The plan of care calls for considering cytoreductive therapy when clinical criteria are met, a determination that requires specialist evaluation.[3] (*Id.*, NP Stewart, 07/07/2026.)

On July 2, 2026, Petitioner's platelet count remained elevated at 760 x10E3/uL (reference range 150–450), with an elevated white blood cell count (11.2), triglycerides of 308 mg/dL (up from 170 mg/dL), and hypertensive blood pressure of 136/89. (*Id.*, 07/02/2026.) On July 7, the Facility ordered repeat laboratory work for October 2, 2026 and placed the three-month hematology referral, which was marked "Pending Approval." (*Id.*, NP Stewart, 07/07/2026.)

**C. Texas Oncology turned Petitioner away because ICE had not paid for his care.**

On September 29, 2026, Respondents transported Petitioner to Texas Oncology, where he was returned to the Facility without being seen because ICE had not paid Texas Oncology for his prior care. (**App. A**, Decl. of Josephine Chen, Esq.) The record before the Court reflects no specialist evaluation since June 30, 2026, and no laboratory results since July 2, 2026.

The denial of medically necessary and legally mandated care for nonpayment is not specific to Petitioner. ICE has lacked a functioning system for paying off-site providers of detainee medical

---

[2] Aaron T. Gerds, MD, et al., *Clinical Practice Guidelines in Oncology: Myeloproliferative Neoplasms, Version 3.2022*, 20 J. Nat'l Compr Cancer Network 1033 (2022), https://doi: 10.6004/jnccn.2022.0046 (last visited Oct. 23, 2026).

[3] Franco Cervantes, *Current Issues in Myeloproliferative Neoplasms: Management of Essential Thrombocythemia*, 2011 Hematology Am. Soc'y Hematol. Educ. Program 215 (2011), https://doi.org/10.1182/asheducation-2011.1.215 (last visited Oct. 23, 2026).

care since October 2025, when the Veterans Administration Financial Services Center (VA-FSC) stopped processing those claims for ICE and the U.S. Customs and Border Protection (CBP).[4]

On September 21, 2026, ICE announced that its new system would begin processing electronic claims on October 12, 2026, but only for services provided from October 1, 2025 through September 30, 2026 (Federal Fiscal Year (FFY) 2026) and submitted by enrolled and approved providers through its new Provider Portal. Adjudication of claims for services provided in FFY 2025 and on or after October 1, 2026 (FFY 2027) “will temporarily suspend” until the appropriate FFY government funds are allocated specifically for EFT (electronic fund transfer) processing.[5] Every specialist visit Petitioner needs from here onward falls within that unpaid, suspended period.

## III. ARGUMENT

### A. The Court should grant the Petition and order Petitioner's release under *Zadvyda*s.

Post-removal-period detention under 8 U.S.C. § 1231(a)(6) is constitutionally limited to "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

---

[4] Letter from Rep. Mark Takano, Ranking Member, H. Comm. on Veterans’ Affairs, & Rep. Delia Ramirez, Ranking Member, Subcomm. on Oversight & Investigations, to Doug Collins, Sec’y, U.S. Dep’t of Veterans Affairs, & Markwayne Mullin, Sec’y, U.S. Dep’t of Homeland Security (July 1, 2026) (Takano-Ramirez Letter), available at https://drive.google.com/file/d/1TtZ-OXi6AHWDvBTQOvb7kyEP7l2zT1BP/view (last visited Oct. 23, 2026).

[5] U.S. Immigration & Customs Enforcement, IHSC Managed Care, *Important Notifications* (updated Sept. 21, 2026) (IHSC Sept. 21,2026 Update), https://www.ice.gov/detain/ice-health-service-corps/ihs-managed-care (last visited Oct. 23, 2026).

Petitioner has made that showing, and Respondents have not rebutted it. Removal to Vietnam is legally barred, Australia has refused to accept him, and the government released him three times before because it could not effectuate his removal. (Dkt. 8-1 ¶¶ 3–5.) Respondents' only rebuttal is that ICE is now "awaiting a third country of removal." (Dkt. 6-1 ¶ 33.) Yet Petitioner was not referred for third-country assistance until May 18, 2026—more than eight and a half months *after* he was detained—and the day he filed this Petition. (Dkt. 8-1 ¶ 9.) Ongoing good-faith efforts to find a country do not justify continued detention. *Zadvydas*, 533 U.S. at 702. As of May 27, 2026, based on Respondents' own under-count, Petitioner had been detained 269 consecutive days and 465 aggregate days under the same removal order. (Dkt. 6-1 ¶ 33.) Nearly five more months have passed since with no evidence of an accepting country, travel documents, or a scheduled removal.

The habeas statute directs the Court to "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243; *see also* 28 U.S.C. § 1657(a). The issues are fully briefed (Dkts. 1, 6–8); Respondents have assented to expedited consideration (Dkt. 9); and no further factual development is needed. Developments in Petitioner's inability to access medically necessary care for a serious and chronic condition make a prompt decision more pressing. Each additional day of detention that § 1231(a)(6) does not authorize now also keeps Petitioner from time-sensitive and medically necessary specialist care. Release under his 2008 OSUP would allow him to return to Massachusetts and resume that care with the support of his family.

### B. Alternatively, detention that bars Petitioner from receiving physician-referred specialist care violates due process, and release is the only adequate remedy.

The government must provide medical care to those it detains. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). A civil

detainee's due process rights in this respect are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere*, 463 U.S. at 244.

In this Circuit, a detainee's medical-care claim requires a showing that officials knew of and disregarded a substantial risk of serious harm. *Hare v. City of Corinth*, 74 F.3d 633, 643, 650 (5th Cir. 1996) (*en banc*); *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference includes "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. A delay in specialist-ordered care that results from the government's refusal to pay, rather than from medical judgment, "could under certain circumstances 'evince a wanton disregard for [a] serious medical need[ ].'" *Delaughter v. Woodall*, 909 F.3d 130, 138 (5th Cir. 2018); *see also Easter v. Powell*, 467 F.3d 459, 463–65 (5th Cir. 2006).

That standard is met here. Petitioner's ET is a serious medical need: a specialist diagnosed it and prescribed specific treatment. *See Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Respondents knew of the prescribed three-month specialist follow-up from their own records (Dkt. 10, NP Stewart, 07/07/2026), from this Court's order (Dkt. 4 ¶¶ 2–3), and from Petitioner's motion noting that the referral was "Pending Approval" (Dkt. 9 at 3). Respondents also know that Petitioner was turned away from the needed follow-up care because ICE had not paid, not because of any medical judgment. (**App. A**.) ICE has also publicly announced that it will not pay for care provided on or after October 1, 2026.[6] Respondents thus know of the risk of ongoing nonpayment and have not taken reasonable measures to abate it. *See Farmer*, 511 U.S. at 847.

Where no conditions of confinement can remedy the violation, release through habeas is appropriate. *Vazquez Barrera v. Wolf*, 455 F. Supp. 3d 330, 336–38 (S.D. Tex. 2020) (habeas

[6] IHSC Sept. 21,2026 Update, *supra* note 5.

proper where detainees "seek immediate release from detention because there are no conditions of confinement that are sufficient to prevent irreparable constitutional injury"). Petitioner recognizes that another court in this District has disagreed with that reasoning. *Francois v. Garcia*, 509 F. Supp. 3d 668, 674–75 (S.D. Tex. 2020). *Francois* does not affect the relief sought here. Petitioner's primary claim challenges the unlawful fact and duration of his detention under *Zadvydas*, a core habeas claim, and Petitioner’s medical facts bear on the urgency of that claim and the remedy. Petitioner’s medical urgency does not convert his habeas claim to one about the conditions of detention. In any event, no condition short of release both resolves Petitioner’s medical emergency and prevents irreparable constitutional injury: transfer to another detention facility would leave Petitioner dependent on the same suspended payment system, and removal outside of the United States requires Petitioner to be physically and medically fit for the required travel.

**C. If the Court cannot rule immediately, limited interim release is warranted.**

A petitioner may be released pending habeas corpus review on a showing of "substantial constitutional claims upon which he has a high probability of success" and that "extraordinary or exceptional circumstances exist which make the grant of [release] necessary to make the habeas remedy effective." *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974). Both heightened requirements—which in *Calley* applied to a post-conviction military prisoner seeking a grant of bail—are met here. Petitioner's *Zadvydas* claim rests on an undisputed record of indefinite and prolonged confinement without a significant likelihood of removal in the reasonably foreseeable future (SLRRFF) in violation of the Fifth Amendment, and a diagnosed blood cancer where the medically necessary and ordered close monitoring by a specialist cannot occur while in ICE custody—an exceptional circumstance that requires release to make the habeas remedy effective. Petitioner lived in his same community in Massachusetts under an OSUP for approximately

twenty-five years, and Respondents have identified no changed circumstances to justify the unexpected revocation of his 2008 OSUP on August 31, 2025 and the ensuing indefinite detention without a SLRRFF. (Dkt. 8-1 ¶ 6.)

### D. If the Court cannot rule immediately and does not grant interim release, an order to ensure Petitioner's access to medically necessary specialist care is necessary.

If the Court declines interim release, Petitioner asks for a narrower order requiring Respondents to: (1) ensure that Petitioner is evaluated by Texas Oncology or another qualified hematologist within seven days of the Order, with the required laboratory work ordered for October 2, 2026 (CBC with differential/platelets, comprehensive metabolic panel, and lipid panel) completed sufficiently beforehand; (2) within ten days of the Order, to file under seal, with a copy served on Petitioner's counsel, a verified status report identifying the status of Petitioner's hematology referral, his most recent laboratory results, follow-up monitoring and treatment schedule, and how Respondents will pay for the off-site care provided on or after October 1, 2026.

Under each scenario, the Court should order Respondents to provide counsel and the Court **at least 72 hours' written notice** before transferring Petitioner from the Facility or removing him from the United States so that he may be appropriately assessed for physical and medical fitness for the required travel and make arrangements to access continued medical care. *See* 28 U.S.C. § 1651(a). This relief imposes little burden. It asks Respondents to complete the care they previously arranged and are legally obligated to provide and preserves the Court's ability to grant effective and timely relief on the Petition and Petitioner's medical emergency.

## IV. RELIEF REQUESTED

For these reasons, Petitioner respectfully requests that the Court:

1. **GRANT** the Petition for Writ of Habeas Corpus (Dkt. 1) and **DENY** Respondents' Motion for Summary Judgment (Dkt. 6);

2. **ORDER** Petitioner's immediate release under the conditions of his 2008 Order of Supervision; require Respondents to arrange and fund his transportation to Boston, Massachusetts within forty-eight hours; return all personal property seized on or after August 31, 2025, including his walking cane; and provide Petitioner and his counsel a complete copy of his detention medical records;
3. **In the alternative**, pending decision on the Petition **ORDER** Petitioner's interim release under the conditions set forth in paragraph 2 so he may secure his own medical care in Massachusetts;
4. **Further in the alternative,** if release pursuant to paragraphs 2 and 3 is denied, **ORDER** Respondents (a) within seven days of the Order, to ensure that Petitioner is evaluated by Texas Oncology or another qualified hematologist, with the required laboratory work ordered for October 2, 2026 (CBC with differential/platelets, comprehensive metabolic panel, and lipid panel) completed sufficiently beforehand; and (b) within ten days of the Order, to file under seal, with a copy served on Petitioner's counsel, a verified status report identifying the status of Petitioner's hematology referral, his most recent laboratory results, follow-up monitoring and treatment schedule, and how Respondents will pay for the off-site care provided on or after October 1, 2026;
5. **In any event, ORDER** Respondents to provide counsel and the Court at least seventy-two (72) hours' written notice before transferring Petitioner from the Houston Contract Detention Facility or removing him from the United States so he may be appropriately assessed for physical and medical fitness for the required travel and make arrangements to access continued medical care, 28 U.S.C. § 1651(a); and
6. **GRANT** such other relief as law and justice require.

Dated: October 24, 2026

Respectfully submitted,

SANG QUANG THAI,

By his attorney,

*_/s/ Lauren D. Song_*
Lauren D. Song
S.D. Tex. Federal ID No. 3972011
Greater Boston Legal Services, Inc.
197 Friend Street
Boston, MA 02114
(617) 603-1729 | LSong@gbls.org

## LOCAL RULE 7.1(D) CERTIFICATE OF CONFERENCE

Pursuant to S.D. Tex. Local Rule 7.1(D), I certify that on October 20, 2026, I conferred by email with Assistant United States Attorney Ariel N. Wiley, counsel for Respondents, at ariel.wiley@usdoj.gov regarding the relief requested in this motion, and AUSA Wiley stated that Respondents oppose this motion.

Dated: October 24, 2026

*_/s/ Lauren D. Song_*
Lauren D. Song
S.D. Tex. Federal ID No. 3972011
Counsel for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2026, the foregoing was filed through the Court's CM/ECF system, which will provide notice to all counsel of record and any other registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants via first class mail.

Dated: October 24, 2026

*_/s/ Lauren D. Song_*
Lauren D. Song
S.D. Tex. Federal ID No. 3972011
*Counsel for Petitioner*