# APPENDIX A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| SANG QUANG THAI,<br><br>Petitioner,<br><br>v.<br><br>MARTIN L. FRINK, Warden, Houston Contract Detention Facility et al., each in their official capacity,<br><br>Respondents. | Civil Action No. 4:26-cv-03933<br><br>**DECLARATION OF JOSEPHINE CHEN, ESQ.** |

I, Josephine Chen, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an attorney licensed to practice law in the Commonwealth of Massachusetts and have assisted Petitioner in immigration matters since September 2025. I make this declaration based on personal knowledge, my review of Petitioner's complete immigration and habeas case files, medical records from February 11 through July 7, 2026, from the Houston Contract Detention Facility (the "Facility") and Texas Oncology, a redacted copy of which has been filed under seal in this habeas case (Dkt. 10), as well as my meetings with Petitioner scheduled via the ICE Detention Facility Appointment Scheduler, including, but not limited to, meetings on June 25, July 6, July 13, July 27, August 11, August 19, September 2, September 21, October 13, and October 23, 2026. If called as a witness, I could and would testify competently to all matters stated herein.

2. After his transfer to Texas in February 2026, Petitioner repeatedly put Facility staff on notice of numerous painful symptoms, including compromised mobility, debilitating weakness, radiating "pins and needles" and sciatic pain, swelling of his extremities, and weight loss, and he repeatedly requested to be examined by competent medical personnel outside of the Facility.

3. In June 2026, after months of persistently abnormal laboratory results and numerous unexplained painful symptoms, Petitioner was formally diagnosed by Texas Oncology in Sugar Land, Texas, through a bone marrow biopsy, with "JAK2 V617F-positive myeloproliferative neoplasm most consistent with essential thrombocythemia"—a chronic, mutation-driven blood cancer with recognized lifelong risks of thrombosis, stroke, and progression to myelofibrosis or leukemia. (Dkt. 10, Texas Oncology, 06/11/2026.)

4. The hematologist at Texas Oncology prescribed a long-term surveillance and treatment plan, which was sent to the Facility. The plan includes antiplatelet therapy with continued daily low-dose aspirin to inhibit and control microvascular symptoms; "[c]lose CBC monitoring" indefinitely at specified intervals; and Petitioner's "[r]eturn in 3 months with repeat labs," making his specialist follow-up due on or about September 30, 2026. (*Id.*, Texas Oncology, 06/30/2026.) Texas Oncology's prescribed plan of care also calls for consideration of cytoreductive therapy when clinical criteria are met—a determination regarding disease progression that requires specialist evaluation.

5. During our October 13, 2026, appointment via Zoom, Petitioner informed me that he had been transported to Texas Oncology on September 29, 2026 for a follow-up evaluation but was told by a Texas Oncology nurse that, because ICE had not paid for any of the services he had already received despite Texas Oncology's repeated demands for payment, he would not be able to see any doctor at Texas Oncology. Petitioner was therefore returned to the Facility without being seen by a hematologist for his ordered and scheduled three-month follow-up assessment.

6. During our October 23, 2026, appointment via Zoom, Petitioner reported that he had been very ill for the past three weeks but had not been provided care at the Facility. He also reported that his blood was drawn at the Facility on October 7, 2026, rather than on the scheduled date of

October 2, 2026, and that it was not unusual for Facility staff to conduct the painful blood draws at any day or time that suited them, including by summoning him in the middle of the night while he was asleep. When I asked about the results of that laboratory work, he confirmed that, as usual, he had not been informed of them. When I asked him to obtain a copy of his Facility medical records from July 2026 to the present, he reported that requesting and accessing his medical information and records was difficult and could take some time because he did not have regular access to medical staff, and he asked me, as his attorney, to request his medical records on his behalf.

7. Petitioner also confirmed that he had not received any off-site care from any medical professional since he was turned away by Texas Oncology on September 29, 2026 because ICE had not made any payment for services already rendered to him.

8. Petitioner also reported that neither Facility staff nor ICE had provided him any information or made any requests of him regarding any travel documents or plans to transfer him to a different detention facility or to remove him from the United States. Petitioner did, however, express grave concern that, given his current medical condition, long-distance travel would be extremely painful, if not impossible, and that he would not be able to obtain necessary medical care for his chronic blood cancer and related symptoms during and after any travel to a third country.

9. As Petitioner's registered immigration attorney, I also have not received any notice relating to any progress on identifying a country for Petitioner's removal, nor about any anticipated travel schedule or documents, contrary to Respondents' assertions (Dkt. 5, p. 7).

Executed on October 23, 2026, at Boston, Massachusetts.

Josephine Chen, Esq.
Greater Boston Legal Services, Inc.
197 Friend Street
Boston, MA 02114
617-603-1666
JosephineChen@gbls.org